**HARRISON CONFERENCE SERVICES, INC., Plaintiff,**

**v.**

**DOLCE CONFERENCE SERVICES, INC., Marenzana Group, Inc., Dolce Conference Services of Connecticut, Inc., and Dolce Company, Defendants.**

**No. 90 C 4459.**

United States District Court, E.D. New York.

July 29, 1991.

Solin & Breindel, P.C. (Howard Breindel, of counsel), New York City, for plaintiff.

Jones, Day, Reavis & Pogue (Robert Layton, Theresa M. Gillis and Jane A. Rue, of counsel), New York City, for defendants.

---

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff brought this action claiming that defendants have improperly procured and used plaintiff's trade secrets and proprietary business information.

Defendants move to dismiss the complaint on the grounds that 1) plaintiff failed to join an indispensable party; 2) the court lacks personal jurisdiction over defendants; 3) plaintiff improperly served process; and 4) venue is improper.

Plaintiff cross-moves to hold defendants in contempt for failure to comply with a preliminary injunction to which they consented. The preliminary injunction required defendants to return all documents containing trade secrets and enjoining them from using the trade secrets disclosed in the documents or soliciting the customers identified in them.

### I

For the purposes of the motion to dismiss, the court accepts the facts alleged in the complaint as true.

Plaintiff operates several corporate conference center facilities nationwide. Until November 1990, it operated a center in Heritage Village, Connecticut. The center is owned by Triangulum Associates, ("Triangulum"). Plaintiff operated it under a management agreement with Triangulum. In September 1990, Triangulum notified plaintiff that it was in default of the management agreement and that Triangulum was entitled to terminate it. In the early morning of December 9th, 1990, Triangulum telecopied a notice of termination to plaintiff and at the same time, accompanied by uniformed security guards, physically ousted plaintiff's personnel from the conference center.

Prior to the takeover, Triangulum had retained Andrew Dolce and John Marenzana. They are principals of companies, here named as defendants, which operate conference centers competing with those operated by plaintiff. Triangulum engaged the defendant companies to operate the Heritage Village Center after it ousted plaintiff.

During the takeover, defendants entered the office occupied by plaintiff's national sales staff and took possession of documents used by plaintiff to market all of its conference centers including pricing and occupancy information, customer files, and customer and employee evaluations. Defendants have used these documents to gain a competitive advantage over plaintiff.

The complaint makes claims for misappropriation of trade secrets, unfair competition, and conversion.

### II

Defendants say that the court should dismiss the action under Rule 19(b) of the Federal Rules of Civil Procedure. They say that plaintiff has failed to join plaintiff's Connecticut subsidiary, Harrison Conference Center of Heritage Village, Inc. ("Harrison–Heritage Village"), and that while the subsidiary is indispensable to the action, its joinder would destroy diversity and leave the court without subject matter jurisdiction.

Rule 19(b) provides in pertinent part that if a person whose joinder is sought cannot be made a party:

> the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties....

Defendants' brief says that Harrison–Heritage Village has asserted an interest in the trade secrets in an action in Connecticut state court against Triangulum. They say that a judgment rendered in the absence of Harrison–Heritage Village will be prejudicial to them because they are at risk of multiple liability if it prevails in Connecticut.

Plaintiff responds that Harrison–Heritage Village has no ownership interest in

the trade secrets, only asserted the claim in Connecticut to protect plaintiff's interest, and is in the process of withdrawing the claim.

The court cannot now determine whether Harrison–Heritage Village has an interest in the trade secrets, and thus cannot assess defendants' risk of multiple liability. If, as discovery in the case progresses, it appears that Harrison–Heritage Village does claim an interest in the trade secrets (if, for instance, it fails to withdraw that claim in the Connecticut litigation), defendants may request the court to revisit this issue.

### III

■ Defendants also say the court has no personal jurisdiction over them, a defense they preserved in consenting to the preliminary injunction.

■ Each defendant is a resident of a state other than New York. In a diversity case, the court determines personal jurisdiction over non-residents by the long-arm jurisdictional provisions of the state in which it sits, *see Arrowsmith v. United Press International*, 320 F.2d 219 (2d Cir. 1963), and the limits of due process.

Section 302(a)(3) of the New York Civil Practice Law and Rules provides a court with jurisdiction over a person who:

commits a tortious act without the state causing injury to person or property within the state ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

The complaint states a claim for a tort occurring outside New York. Plaintiff claims that the trade secret documents contain information regarding customers located in New York. If defendants improperly use the trade secrets to take New York customers from plaintiff, defendants will cause an injury within New York, *see Cleopatra Kohlique, Inc. v. New High Glass,*

*Inc.,* 652 F.Supp. 1254, 1257 (E.D.N.Y.1987). It is fair to infer defendants could have foreseen that injury. *See Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 206, 413 N.Y.S.2d 127, 132, 385 N.E.2d 1055, 1060 (1978) (injury foreseeable when New York customers pursued). Defendants do not dispute that each of them derives substantial revenue from interstate commerce.

The court has personal jurisdiction over each of the defendants.

### IV

■ Defendants argue that the action was brought in the wrong district.

The Judicial Improvements Act of 1990 included an amendment to the venue statute. Section 1391(a) of Title 28, which governs venue in diversity cases, now reads as follows:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced."

If Section § 1391(a)(3) means what it says, venue is proper in this district. All defendants are subject to the court's jurisdiction. Defendants argue that the court should not read the subsection literally. They quote from the House of Representatives Report on the bill that became law.

Subsection 3 is meant to cover the cases in which no substantial part of the events happened in the United States and in which all the defendants do not reside in the same state. This provision would act as a safety net....

H.R.Rep. No. 734, 101st Cong., 2nd Sess. 23, *reprinted in* 1990 U.S.Code Cong. & Admin.News, pp. 6860, 6869. Defendants argue that to interpret subsection (3) to provide venue in other types of cases would

be to render subsections (1) and (2) superfluous and urge the court to interpret the statute to give effect to each subsection.

If subsection (3) were read to apply to an action with but one defendant, the other subsections would be plainly superfluous. But subsection (3) refers not to "a defendant" but to "the defendants," and the court reads it to apply only in multiple defendant cases. Such a reading is consistent with the literal meaning of the words used and renders neither of the other subsections superfluous. The court should strive to give effect to all provisions of a statute. *See Weinberger v. Hynson, Westcott and Dunning, Inc.,* 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207, 223 (1973). *See also* Wright, Miller & Cooper, *Federal Practice and Procedure* § 3802.1 (1991 Supp. at 4–5). It is not for a court to assume that Congress did not appreciate what it was doing. *See United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980).

The House Report says that the subsection is meant to cover the cases where events take place outside the United States. It does not say that it covers only such cases or that Congress intended that it should.

Venue is proper in this district.

## V

Defendants say this district is inconvenient because all of the events underlying the action took place in Connecticut. The complaint says that defendants are competing unfairly for plaintiff's customers, many of whom are located in New York. That is a sufficient contact between this action and this forum.

The court has examined defendants' remaining arguments for dismissal and finds they have no merit. Defendants' motion to dismiss the complaint is denied.

## VI

Plaintiff has made two separate motions to hold defendants in contempt for violating the injunction entered on consent.

The first concerned a failure by defendants to return certain documents they had agreed to return. The court is satisfied that any withholding of documents was an inadvertent mistake caused by defendants' change of counsel.

The second concerns defendants' customer solicitation that plaintiff says violates the injunction. Plaintiff has attached affidavits of customers who say that defendants have solicited their business. All of the affiants were customers of the Heritage Village center, and defendants have solicited their continued patronage at that center—now managed by defendants. Plaintiff does not claim that defendants have solicited for their other centers customers who used the Heritage Village center or that defendants have solicited customers who used only plaintiff's other centers.

Defendants' conduct did not violate the injunction. Presumably they solicited the customers from documents relating to the Heritage Village center.

Plaintiff sought an injunction from this court claiming that defendants purloined documents from plaintiff's national sales office—an office that was both physically and functionally separate from the business of running the Heritage Village center. The court does not interpret the complaint to make claims regarding other documents. It would not be equitable for the court to enjoin the managers selected by the owner of the Heritage Village center from using documents generated during its business to continue that business at that center alone.

The court will not inquire into whether documents relating to the Heritage Village center belong to plaintiff or to the owners of the inn. That inquiry would necessarily involve an interpretation of the management agreement between those parties. Plaintiff has insisted that the management agreement is outside the scope of this action.

Plaintiff's motions to hold defendants in contempt are denied.

So ordered.